**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **PEACHSTATE HEALTH** | ) | |
| **MANAGEMENT, LLC d/b/a** | ) | |
| **AEON GLOBAL HEALTH,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**COMPLAINT**

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on race, sex, and retaliation and to provide appropriate relief to Crystal McDonald ("McDonald"), who was adversely affected by such practices. The United States Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Peachstate Health Management, LLC d/b/a AEON Global Health ("Defendant"), engaged in intentional discrimination against McDonald by subjecting her to a hostile work environment based on her sex (female) and race (African-American), by failing to take prompt

and effective action to remedy the hostile work environment, and by taking adverse

employment action against McDonald in retaliation for her complaints of race-based

and sex-based harassment, all in violation of Title VII.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331,

1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section

706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as

amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights

Act of 1991, 42 U.S.C. § 1981(a).

2.      The employment practices alleged to be unlawful were committed

within the jurisdiction of the United States District Court for the Northern District

of Georgia, Gainesville Division. Venue is proper in this Court under 28 U.S.C. §

1391.

## PARTIES

3.      Plaintiff, the EEOC, is the agency of the United States of America

charged with the administration, interpretation, and enforcement of Title VII and is

expressly authorized to bring this action by 706(f)(1) and (3) of Title VII, 42 U.S.C.

§ 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant's principal place of business has been in Gainesville, Georgia, Defendant has conducted business in the State of Georgia, and it has continuously had at least 15 employees.

5.     At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701 (g) and (h) of Title VII, 42 U.S.C. § 2000e (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.     More than thirty days prior to the institution of this lawsuit, McDonald filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.

7.     On February 10, 2021, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII had been violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.     On March 22, 2021, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9.      All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF CLAIMS**

10.     Since at least October 2017, Defendant has engaged in unlawful employment practices at its offices in Gainesville, Georgia, in violation of Section 102 of Title VII, 42 U.S.C. § 2000e-3(a), by subjecting McDonald to a hostile work environment based on her sex (female) and race (African-American), by failing to take prompt and effective remedial action to remedy the hostile work environment, and by retaliating against her for reporting discrimination.

11.     Defendant hired McDonald, an African-American woman, on or about June 2013.

12.     McDonald was promoted several times, and her last position with Defendant was in client services, sales, and operations.

13.     In or about October 2017, Defendant hired an internal business operations consultant.

14.     McDonald began reporting to the internal business operations consultant on or about October 2017.

15.     Beginning on or about October 2017 and continuing through on or about January 11, 2018, the internal business operations consultant (the "Harasser")

began to make race-based and sex-based derogatory comments about Charging Party on a daily basis.

16.     For example, the Harasser called McDonald a "stupid Black bitch," a "hoodlum" and a "heifer" in front of other employees, including Defendant's Human Resources Representative.

17.     The Harasser also frequently mocked McDonald's clothes and appearance in the presence of other employees.

18.     McDonald immediately told the Harasser to stop each time the Harasser subjected McDonald to the sex-based and race-based verbal harassment.

19.     Beginning on or about October 2017 and continuing until on or about January 11, 2018, McDonald complained one or more times per week to the Human Resources Representative about the Harasser's daily sex-based and race-based verbally harassing behavior.

20.     The Human Resources Representative took no action to remedy or correct the Harasser's behavior.

21.     On or about November 2017, McDonald contacted Defendant's CEO and Chairman (the "CEO") to report the Harasser's ongoing, daily race-based and sex-based verbal harassment.

22.     The CEO told McDonald that he could not resolve every employee issue, and to instead either contact Human Resources or directly work it out with the Harasser.

23.     McDonald explained to the CEO that she had already brought the harassment to the attention of Human Resources.

24.     Instead of taking any remedial action to investigate or correct McDonald's reports of sex-based and race-based harassment, the CEO made excuses for the Harasser's behavior.

25.     McDonald attempted to complain to the CEO about the Harasser's verbal harassment again on or about December 2017, but he ignored her.

26.     On or about December 2017, Defendant ordered McDonald to move her desk closer to the Harasser.

27.     McDonald complained about this move to Human Resources, because she felt uncomfortable around the Harasser as a result of the ongoing, daily race-based and sex-based verbal harassment.

28.     Defendant issued discipline to McDonald for refusing to move her desk next to the Harasser's desk.

6

29.     Upon information and belief, on or about December 2017, Defendant learned that McDonald retained an attorney to represent her in connection with her claims of a sex-based and race-based hostile work environment.

30.     On or about December 2017, the General Counsel for Defendant ("the General Counsel") asked to meet with McDonald in Defendant's warehouse.

31.     During said meeting, the General Counsel attempted to influence McDonald to withdraw her Title VII claims and fire her attorney.

32.     Shortly thereafter, on or about January 11, 2018, the CEO approached McDonald at her desk and asked her in a raised voice in front of other employees, "Do you have a problem with me?"

33.     The CEO continued to yell at McDonald while she remained seated at her desk.

34.     McDonald attempted to walk away from the CEO, but the CEO pursued her through the building while continuing to yell obscenities and insults at her.

35.     McDonald and the CEO then met in the Office of the Chief Financial Officer with the Chief Financial Officer, the General Counsel, the Human Resources Representative, and at least one other individual.

36.     McDonald began to cry.

37.     McDonald attempted to reason with the CEO, and she pointed out her accomplishments for Defendant during her five years of employment.

38.     The CEO became angry and told the Human Resources Representative to write up McDonald for insubordination and suspend her for one week.

39.     Moments later, the CEO told McDonald that she was fired and asked the Human Resources Representative to escort McDonald from the building.

40.     During the meeting on or about January 11, 2018, the CEO directed vulgar sex-based language toward Charging Party, including by telling McDonald to "Get the fuck out of my building immediately," calling her an "insubordinate bitch," telling her to "Get your fucking papers from your attorney, I'll send everything to him after I tell him I fired your stupid ass," and asking her "What the fuck are you crying for? I care nothing about tears, get this bitch out of my building."

41.     After McDonald was escorted from the building and her employment was terminated, the CEO continued to refer to McDonald as a "bitch" in front of other employees.

42.     The unlawful employment practices complained of above were intentional.

43.     The unlawful employment practices complained of above were done with malice and/or with reckless indifference to McDonald's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment, engaging in employment practices which discriminate against employees based on their race or sex, subjecting employees to adverse employment actions for engaging in protected activity by complaining about unlawful employment practices, and otherwise engaging in any other employment practices which discriminate against employees for engaging in protected activity.

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees who engage in protected activity and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make McDonald whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other

affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement.

D.   Order Defendant to make McDonald whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.   Order Defendant to make McDonald whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.   Order Defendant to pay McDonald punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G.   Grant such further relief as the Court deems necessary and proper in the public interest.

H.   Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

LISA MORELLI
Acting Associate General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney

s/ *Robyn M. Flegal*
Robyn M. Flegal, Esq.
Trial Attorney
Georgia Bar No. 599572
robyn.flegal@eeoc.gov

U.S. Equal Employment Opportunity
Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
(404) 562- 6882 (direct)
(404) 562-6905 (facsimile)